■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v CONRAD HERON, Respondent.—Appeal by the People from an order of the Supreme Court, Kings County (De Lury, J.), dated August 1, 1990, which granted the defendant's motion to suppress physical evidence.

Ordered that the order is reversed, on the law, the defen-

dant's motion to suppress physical evidence is denied, and the matter is remitted to the Supreme Court, Kings County, for further proceedings consistent herewith.

The relevant facts adduced at the suppression hearing were that on October 8, 1989, at approximately 1:45 A.M., Police Officer Gary Napoli was on plainclothes patrol in a vehicle with Police Officers John Cantwell and Gary Coe. The officers were driving slowly down Argyle Road between Church Avenue and Caton Avenue, an area known to be a "drug location," when the defendant, who was standing in front of 39 Argyle Road with another male (Anthony Davis), made a "quick hand gesture", approached the passenger side of the car, and said "What do you want?" As the defendant looked into the car, his eyes widened and he immediately turned around and started walking back to the building.

Officer Napoli suspected that the defendant was attempting to sell the officers drugs, and that he aborted his attempt when he realized that his potential customers were police officers. Officer Napoli suspected that the defendant was trying to sell them drugs, because, based upon his experience as a police officer, it is a common practice in a "drug location" for people known as "steerers" to approach a vehicle.

The defendant approached Davis and had a conversation with him for a "few seconds". Davis opened the door to the apartment building and entered, and the defendant followed him in. The officers followed the defendant into the building. The building was a multiple dwelling, with an outside door, a small foyer area, and 2 to 3 steps leading to an inside door which led into the building.

As the officers entered the building, Officer Napoli said, "Police, hold it up". The defendant and Davis ignored the command. Davis was opening the inside door to the building, and the defendant was to Davis' right, up the steps on the landing. As the officers entered, Officer Coe yelled out "Gun," and grabbed Davis. Officer Napoli did not see a gun at that time, but the defendant started to walk down the steps with his hand on his waistband, so Officer Napoli pulled the defendant down the steps and put the defendant's hands against a wall. Officer Napoli patted down the defendant and found a loaded nine millimeter gun in his waistband. The defendant was arrested and, after a more thorough search of him, Officer Napoli found 40 vials of a white substance and $130 in United States currency on him.

The Supreme Court erred in granting suppression of the

physical evidence recovered from the defendant. The defendant's conduct in approaching the undercover officers' vehicle in the early morning hours, in a location known for drug activity, and his flight from the vehicle upon the apparent realization that the occupants were police officers, provided the officers with the requisite reasonable suspicion that the defendant had committed or was about to commit a crime. Thus, the officers were justified in following the defendant into the lobby of the apartment building in order to stop the defendant and demand of him his name, address, and an explanation of his conduct (see, CPL 140.50 [1]; *People v Mack,* 162 AD2d 624; *People v Mann,* 143 AD2d 200). Once the police officers entered the building, the failure of the defendant to respond to Officer Napoli's command "Police, hold it up", together with Officer Napoli's observation of the defendant reaching to his waistband, gave Officer Napoli reason to suspect that he was in danger of physical injury. Under these circumstances, Officer Napoli was authorized to search the defendant for a deadly weapon (see, CPL 140.50 [3]). "It is quite apparent to an experienced police officer, and * * * it may almost be considered common knowledge, that a handgun is often carried in the waistband" (*People v Benjamin,* 51 NY2d 267, 271; *see also, People v McEachin,* 148 AD2d 551, 552).

Probable cause to arrest the defendant existed upon the discovery of the gun, and the subsequent seizure of the drugs and money was proper. Accordingly, the physical evidence was not obtained as a result of illegal police conduct, and the hearing court erred in suppressing the evidence obtained from the defendant. Harwood, J. P., Balletta, Rosenblatt and Copertino, JJ., concur.